UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

NAUTILUS INSURANCE
COMPANY,

        Plaintiff,

    v.

RAINBOW COMMUNITY
CENTER, INC., et al.,

        Defendants.

CIVIL ACTION NO.

1:19-CV-1716-CAP

## O R D E R

This is a declaratory judgment action filed by Nautilus Insurance

Company ("Nautilus") against the defendants Rainbow Community Center,

Inc. ("RCC"), Clara Lett, Ronquisha Farley, and Elanda Brown as the

natural mother and next friend of Ronquisha Farley (the "Farley

Defendants"). Nautilus has filed a motion for summary judgment. [Doc. No.

26]. That motion is currently before the court for consideration.

## I.    Procedural background

On August 23, 2018, the Farley Defendants sued RCC and Lett in the

Superior Court of Newton County, Georgia for claims stemming from an

incident on the RCC premises. [Doc. No. 1-1]. Lett was the chief executive

officer of RCC, a shelter for disadvantaged persons, in August 2016, when

Ronquisha Farley utilized RCC's services. Farley was raped on the RCC

premises by Roy Ellington Hunter, Jr., a resident of the shelter. Hunter was found guilty by a jury and subsequently sentenced to life in prison for rape to be followed by a ten-year consecutive sentence for false imprisonment. In 2018, the Farley Defendants sued Lett and RCC in the Superior Court of Newton County, Georgia, claiming that they were "responsible for Farley's resulting injuries for negligently, wantonly, or recklessly managing the premises by failing to keep the premises safe for their invitees and tenants, failing to protect them from third-party criminal attacks, and failing to warn them of same." [Doc. No. 1 at 5, Compl. ¶14]. At the time of the attack on Farley, RCC had a commercial general liability insurance policy with Nautilus.

Nautilus filed this action on April 17, 2019, seeking a declaration that it has no duty to defend or indemnify RCC or its employee Lett for claims asserted by the Farley Defendants. [Doc. No. 1]. The Farley Defendants filed an answer on May 30, 2019. [Doc. No. 3]. RCC and Lett filed their answer on June 5, 2019. [Doc. No. 4]. After discovery had begun, Nautilus filed a motion for judgment on the pleadings. [Doc. No. 11]. None of the defendants filed a response, and the court granted the motion on August 19, 2019. [Doc. No. 12]. The next day, the clerk entered a judgment that

Nautilus did not have a duty to defend or indemnify RCC or Lett for claims in the Farley Defendants' lawsuit.  [Doc. No. 13].  On that same day, the Farley Defendants filed a motion asking this court to reconsider its order and vacate the judgment. [Doc. No. 14].  The court subsequently granted that Rule 60 motion after applying the four-factor test in *Pioneer Inv. Services Co. v. Brunswick Associates Ltd. Partnership*, 507 U.S. 380 (1993). [Doc No. 16].  The case was reopened, and the parties proceeded with discovery.  Nautilus then filed its motion for summary judgment.  [Doc. No. 26].  Attached to the motion for summary judgment is the third amended complaint that has been filed in the underlying action.  [Doc. No. 26-1].[1] RCC and Lett have not filed a response to the motion for summary judgment.[2]  The Farley Defendants, however, have filed a response in opposition.  [Doc. No. 31].  Nautilus has filed a reply brief in support.  [Doc. No. 37].

---

[1] Brown has been substituted in the underlying action by Terri Fields as next friend of Ronquisha Farley.  [Doc. No. 26-1 at 1].
[2] RCC and Lett did participate in discovery, as evidenced by the filing of their certificate of service of Lett's and RCC's respective responses to Nautilus' first interrogatories and requests for production.  [Doc. No. 22].

3

## II.   The status of the Farley Defendants in this declaratory judgment action

This case is before the court on diversity jurisdiction.  "A federal court sitting in a diversity action applies state law using the choice of law rules of the forum state, in this case Georgia." *Travelers Prop. Cas. Co. of Am. v. Moore*, 763 F.3d 1265, 1270 (11th Cir. 2014).  Nautilus seeks a declaration that it does not have an obligation to defend or indemnify its insured, RCC, or its employee Clara Lett, for the claims asserted by the Farley Defendants in the state court lawsuit.  "Insurance is a matter of contract and rules governing construction of contracts are applicable to insurance contracts." *Wilson v. S. Gen. Ins. Co.,* 349 S.E.2d 544, 545 (Ga. Ct. App. 1986).

The Farley Defendants are not parties to the insurance contract at issue between Nautilus and RCC.  [Doc. No. 26-3].  Generally, "the [underlying] plaintiff is not in privity of contract with either the [underlying] defendant or the defendant's insurance company under the liability insurance policy and is not considered a third party beneficiary of the policy." *Atl. Specialty Ins. Co. v. Lewis*, 802 S.E.2d 844, 848 (Ga. Ct. App. 2017).  However, the Georgia Supreme Court has ruled that an insurer should join the plaintiff in the underlying tort action as a proper party to the declaratory judgment action concerning a coverage dispute related to the

4

pending tort suit.  In *Saint Paul Fire & Marine Ins. Co. v. Johnson*, 117

S.E.2d 459, 461 (Ga. 1960), the Georgia Supreme Court stated:

> Where, as here, the insurance company presents a justiciable
> controversy with its insured, wherein it seeks determination of
> the question of whether, under the facts alleged and the terms of
> its policy, it is required to defend the insured in damage suit
> actions, an adjudication of that question will determine the
> company's liability to pay any judgment obtained by the
> plaintiffs; but, if the plaintiffs are not parties to the declaratory-
> judgment action they will not be bound thereby.  *See Loudermilk*
> *v. Fidelity & Casualty Co. of New York*, 5 Cir., 199 F.2d 561, 565,
> and *New Amsterdam Casualty Co. v. Murray*, 6 Cir., 242 F.2d
> 549, and citations therein. If they later secure judgments against
> the insured, not being bound by the former adjudication of the
> issue of the insurance company's liability in the other, they may
> bring suit against the insurance company on their judgments.
> The result could be an adjudication by the same court of no
> liability in one action and liability in the other. Clearly,
> therefore, not only does there exist a justiciable controversy
> within the meaning of the Declaratory Judgment Act, but the
> plaintiffs in the damage suit are proper parties to the
> declaratory-judgment action brought by the insurance company
> against its insured.

Another court in this district has previously determined that two of the

named defendants in the federal declaratory judgment action, who were also

the plaintiffs in the underlying state court lawsuit (the Haslups), did not

have standing to contest coverage under the insurance contract by

responding to the insurance company's motion for summary judgment in the

federal declaratory judgment action.  *Allstate Property and Casualty Ins. Co.*

*v. Haslup*, No. 2:10-CV-0191-WCO, 2012 WL 12953465, at * 4 (N.D. Ga. Jan.

12, 2012).   However, on appeal, the Eleventh Circuit remarked that it disagreed with this conclusion.[3]  *Allstate Property and Cas. Ins. Co. v. Haslup*, 502 F. App'x 845, 846 n.2 (11th Cir. 2012).  It determined that the Haslups were proper defendants pursuant to the Georgia Supreme Court's decision in *Saint Paul*, thus they had standing to respond because they would be bound by the judgment that was rendered.  In *Robison v. Casteel*, another court in this district analyzed law from the Eleventh Circuit and the Georgia courts to determine whether the plaintiffs in an underlying lawsuit are proper parties to a declaratory judgment action between an insurance company and its insured.  407 F.Supp.3d 1324, 1328-29 (N.D. Ga. 2019).  That court concluded that "[u]nder Georgia law, it is clear that a third-party seeking to recover from an insured is a proper party to a declaratory judgment action between an insured and the insurer."  *Id*.  The Eleventh Circuit determined likewise in *American Safety Cas. Ins. Co. v. Condor Associates, Ltd.*, 129 F.  App'x 540, 542 (11th Cir. 2005) when it stated that the ruling in *Ranger Insurance Co. v. United Housing of New Mexico,* 488 F.2d 682 (5th Cir. 1974) that "absent tort claimants were indispensable parties to the insurer's declaratory judgment action against the insured

---

[3] The Eleventh Circuit affirmed the district court on other grounds.

6

because, were the case allowed to proceed without them, the claimants' interests would be prejudiced" is binding on the courts in this circuit.  It found that the district court did not abuse its discretion when it dismissed the insurance company's declaratory judgment action for failing to join the plaintiffs from the underlying lawsuit.  Another court in this district has likewise dismissed an insurance company's declaratory judgment claim because the plaintiffs from the underlying action were not properly in the suit.  *Colony Nat. Ins. Co. v. Teaford Co., Inc.*, No. 2:10–CV–0028–RWS, 2010 WL 4339369, at * 2-3 (N.D. Ga. Oct. 26, 2010).  That court cited *Ranger* in support of its decision as well as additional Fifth Circuit precedent, including *Central Sur. & Ins. Co. v. Norris,* 103 F.2d 116, 117 (5th Cir. 1939).  There, the Fifth Circuit stated:

> It would be very inconvenient if the federal court should, these [underlying injured parties] not being parties, decide that the [insurance] policy does not apply, and the [insurer] should not defend the actions and the [underlying injured parties] should recover and then the State court should decide the policy does apply. The interest of [underlying injured parties] in the question the Insurance Corporation is trying to get adjudicated by a declaratory judgment is real and substantial. . . . They ought to be retained as parties to be heard on it and to be bound by the result.

This court is persuaded by these cases that the Farley Defendants are proper defendants and thus have standing to respond to the motion for summary judgment.[4]

## III.   Factual summary

RCC provides services and housing for individuals who are homeless or who are transitioning from institutions such as hospitals or correctional facilities. [PSMF ¶9].[5]   Lett is the executive director of RCC.  [PSMF ¶38].

---

[4] The court distinguishes the instant action from *Capitol Indem. Corp. v Fraley*, 597 S.E.2d 601 (Ga. Ct. App. 2004) because here the Farley Defendants argue that the policy is ambiguous and that their claims against RCC and Lett are not excluded by the policy provisions.  In *Fraley*, the defendant raised the sole argument of estoppel in opposition to the insurance company's motion for summary judgment.  The Georgia Court of Appeals determined that Fraley did not have standing to assert the defense of waiver or estoppel against the insurance company for failure to provide a timely notice of reservation of rights.  That ruling reaffirmed the general rule in Georgia that the plaintiff in the underlying action does not have standing to bring a direct action against the insurance company, including asserting a counterclaim or certain equitable defenses, unless the plaintiff has received a judgment that remains unsatisfied.  *See Arnold v. Walton*, 54 S.E.2d 424 (Ga. 1949); *Colonial Penn Ins. Co. v Hart*, 291 S.E.2d 410 (Ga. Ct. App. 1982).

[5] Citations that reference only paragraph numbers preceded by "PSMF" refer to the plaintiff's statement of material facts, [Doc. No. 26-6], or portions thereof, that are not disputed.  Citations that reference only paragraph numbers preceded by "DSMF" refer to the Farley Defendants' statement of material facts, [Doc. No. 33], or portions thereof, that are not disputed.  Pursuant to the Local Rules of this court, each of the proponents' facts will be deemed admitted unless the other side "(i) directly refutes the [proponents'] fact with concise responses supported by specific citations to evidence (including page or paragraph number); (ii) states a valid objection

RCC reserves 47 beds for use by the State of Georgia to place individuals who are reentering society following release from jail or prison. [PSMF ¶10]. In August 2016, Ronquisha Farley was a resident at RCC, living in the women's dormitory. [PSMF ¶13]. Farley suffers from a mental disability that hinders her cognitive abilities. She also suffers from a condition known as dwarfism. [DSMF ¶8]. She had been placed at RCC by Adult Protective Services. [DSMF ¶9, Lett Dep. 51:17-52:9]. In August 2016, Roy Elling Hunter, Jr. was also a resident of RCC, having lived there approximately 15 months. [PSMF ¶¶15, 16, DSMF ¶11]. Hunter was a parolee, having been previously convicted of voluntary manslaughter. [PSMF ¶15, DSMF ¶11]. Hunter was not an employee of RCC nor did he perform any work at RCC. [PSMF ¶17]. On August 31, 2016, Hunter sexually assaulted Farley on the RCC premises. [PSMF ¶¶5, 22]. Farley immediately reported the assault to RCC. [DSMF ¶14]. RCC has admitted that it was aware of the assault no

---

to the admissibility of the [proponents'] fact; or (iii) points out that the [proponents'] citation does not support the [proponents'] fact or that the [proponents'] fact is not material or otherwise has failed to comply with the provisions set out in LR 56.1 B(1)." LR 56.1B(2), NDGa. Where a factual assertion or portion thereof is properly disputed, the court will cite to the paragraph appearing in the proponents' statement of material fact; will view the material evidence and factual inferences in the light most favorable to the non-movant; and will, where appropriate, also cite directly to the evidence supporting the court's resulting factual recitation.

later than September 1, 2016.  [PSMF ¶37].  Lett was informed of the
assault on the night that it occurred, at which time she went to the RCC
premises, spoke with Hunter, and called the police about the assault.
[PSMF ¶¶38-40].  She reported the assault to the RCC board of directors the
next day.  [PSMF ¶41].  In February 2018, Hunter was sentenced to life in
prison for raping Farley, with a consecutive 10-year sentence for false
imprisonment.  [PSMF ¶7, DSMF ¶14].

In 2018, the Farley Defendants filed a complaint in state court for
injuries related to the sexual assault.  [PSMF ¶5].  The third amended
complaint in that lawsuit is the operative complaint. [PSMF ¶1].  The third
amended complaint brings claims of negligence, tortious misconduct, breach
of contract, and nuisance against RCC and Lett.  [PSMF ¶2].  RCC and Lett
were served with process in this lawsuit in September 2018.  [PSMF ¶43].
Neither Lett nor RCC notified Nautilus of the assault on Farley until they
were served with process in September 2018.  [PSMF ¶43-45].  Nautilus did
acknowledge receipt of a letter from counsel for the Farley Defendants in
June 2018 concerning a claim arising out of the assault.  [DSMF ¶22].

The lawsuit filed by the Farley Defendants was tendered to Nautilus
for coverage under a policy issued to RCC for the period of October 4, 2015,
to October 4, 2016.  [PSMF ¶25].  Under the policy, Nautilus has a duty to

defend RCC against any suit seeking damages to which the policy applies. [PSMF ¶30].  Nautilus has been providing a defense for RCC and Lett in the lawsuit under a reservation of rights.  [PSMF ¶26].  Generally, the policy provides coverage for bodily injuries or property damage caused by an occurrence during the coverage period.  [PSMF ¶27].  The policy contains definitions of both "bodily injury" and "occurrence."  [PSMF ¶28, 29].  The policy contains condition precedents for coverage of a claim.  [PSMF ¶32]. One condition precedent requires the insured to notify Nautilus as soon as practicable of an occurrence or event that may result in a claim.  [PSMF ¶32].  The policy also contains several exclusions. [PSMF ¶33-36].  One exclusion concerns bodily injury arising from an assault or battery.  [PSMF ¶33].  Another exclusion concerns bodily injury arising from abuse or molestation.  [PSMF ¶34].  A third exclusion concerns damages based on a breach of contract.  [PSMF ¶35].  The policy states that it also does not apply to punitive or exemplary damages.  [PSMF ¶36].

## IV.    Summary judgment standard

Rule 56(a) of the Federal Rules of Civil Procedure authorizes summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." The party seeking summary judgment bears the burden of demonstrating

that no dispute as to any material fact exists. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 156 (1970); *Johnson v. Clifton*, 74 F.3d 1087, 1090 (11th Cir. 1996). The moving party's burden is discharged merely by "'showing'—that is, pointing out to the district court—that there is an absence of evidence to support [an essential element of] the nonmoving party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986).

In determining whether the moving party has met this burden, the district court must view the evidence and all factual inferences in the light most favorable to the party opposing the motion. *Johnson*, 74 F.3d at 1090. Once the moving party has adequately supported its motion, the nonmovant then has the burden of showing that summary judgment is improper by coming forward with specific facts showing a genuine dispute. *Matsushita Electrical Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).

In deciding a motion for summary judgment, it is not the court's function to decide issues of material fact but to decide only whether there is such an issue to be tried. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251 (1986). The applicable substantive law will identify those facts that are material. *Id.* at 247. Facts that in good faith are disputed, but which do not resolve or affect the outcome of the case, will not preclude the entry of summary judgment as those facts are not material. *Id.* Genuine disputes

are those by which the evidence is such that a reasonable jury could return a verdict for the nonmovant. *Id.* "Genuine" factual issues must have a real basis in the record. *See Matsushita*, 475 U.S. at 586. "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" *Id.* at 587 (citations omitted).

## V.   Analysis

Nautilus argues that it has no duty to defend or indemnify RCC and Lett for the claims asserted in the Farley Defendants' lawsuit.  First, it contends that RCC failed to give timely notice of the claim of Nautilus, as required under the policy.  Secondly, it asserts that the claims and alleged injuries in the underlying lawsuit are excluded from coverage under its policy with RCC under the "All Assault or Battery" and "Abuse or Molestation" provisions.  Lastly, it avers that the policy contains exclusions for the other claims that are based on the breach of a purported agreement or contract.  [Doc. No. 26 at 2].  The Farley Defendants respond that the policy is ambiguous and does not bar coverage even though RCC and Lett did not notify Nautilus of the Farley Defendants claims until September 2018.  They also argue that the policy exclusions do not bar their claims for

negligence, tortious misconduct, breach of contract, and nuisance.  [Doc. No. 31 at 3].

There is no dispute that RCC and Lett were aware of the assault on Ronquisha Farley by September 1, 2016, one day after the assault occurred. There is also no dispute that RCC and Lett did not notify Nautilus about the assault until after they received service of the underlying lawsuit in September 2018, two years later.  Under Georgia law, notice provisions which are made a condition precedent to coverage under an insurance contract are valid, and where an insured has not demonstrated sufficient justification for failure to give notice in accordance with such notice provisions, then the insurer is not obligated to provide coverage or a defense. *Kay-Lex Co. v. Essex Ins. Co.*, 649 S.E.2d 602 (Ga. Ct. App. 2007). Generally, "[t]he purpose of the notice provision in an insurance policy is to enable an insurer to investigate promptly the facts surrounding the occurrence while they are still fresh and the witnesses are still available, to prepare for a defense of the action, and, in a proper case, to determine the feasibility of settlement of the claim." *Richmond v. Georgia Farm Bureau Mutual Ins. Co.*, 231 S.E.2d 245, 250 (Ga. Ct. App. 1976).

The policy contains a section entitled "Duties in The Event Of Occurrence, Offense, Claim Or Suit."  [Doc. No. 26-3 at 23, Policy § IV, ¶2]. This section reads as follows:

**2. Duties In The Event Of Occurrence, Offense, Claim Or Suit**

**a.** You must see to it that we are notified as soon as practicable of an "occurrence" or an offense which may result in a claim. To the extent possible, notice should include:

   (1)  How, when and where the "occurrence" or offense took place;

   (2)  The names and addresses of any injured persons and witnesses; and

   (3)  The nature and location of any injury or damage arising out of the "occurrence" or offense.

**b.**  If a claim is made or "suit" is brought against any insured, you must:

   (1)  Immediately record the specifics of the claim or "suit" and the date received; and

   (2)  Notify us as soon as practicable.

   You must see to it that we receive written notice of the claim or "suit" as soon as practicable.

**c.**  You and any other involved insured must:

   (1)  Immediately send us copies of any demands, notices, summonses or legal papers received in connection with the claim or "suit";

   (2) Authorize us to obtain records and other

15

information;

(3) Cooperate with us in the investigation or settlement of the claim or defense against the "suit"; and

(4) Assist us, upon our request. in the enforcement of any right against any person or organization which may be liable to the insured because of injury or damage to which this insurance may also apply.

**d.** No insured will, except at that insured's own cost, voluntarily make a payment, assume any obligation, or incur any expense, other than for first aid, without our consent.

[Doc. No. 26-3 at 23].  Of the four events listed, only "occurrence" and "suit" are defined in the policy.  Under Georgia law, "terms in an insurance policy are given their ordinary and customary meaning" unless they are otherwise defined in the contract.  *Stagl v. Assurance Co. of Am.,* 539 S.E.2d 173, 175 (Ga. Ct. App. 2000).  "Words are to be understood in their ordinary, everyday meanings—unless the context indicates that they bear a technical sense." Antonin Scalia & Bryan A. Garner, *Reading Law: The Interpretation of Legal Texts* § 6, at 69 (2012).  As for an insurance policy, it "'should be read as a layman would read it.'" *Alea London Ltd. v. American Home Servs., Inc.*, 638 F.3d 768 (11th Cir. 2011) (quoting *York Ins. Co. v. Williams Seafood of Albany, Inc.,* 544 S.E.2d 156, 157 (Ga. 2001)).

"Occurrence" is defined in the policy as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions." [Doc. No. 26-3 at 27, Policy § V, ¶13]. "Suit" is defined as "a civil proceeding in which damages because of a 'bodily injury', 'property damage' or 'personal and advertising injury' to which this insurance applies are alleged. [*Id*. at 28, Policy § V, ¶18]. Based on these definitions, the assault of Ronquisha Farley on August 31, 2016 was neither an occurrence nor a suit which would trigger the notice provision of the policy. Farley was intentionally assaulted by Hunter, and no civil proceeding based on the incident was filed until 2018.

The Oxford English Dictionary defines "claim" as "a demand for something as due" or "an assertion of a right to something." https://www.oed.com/search?searchType=dictionary&q=claim&_searchBtn=Search (last visited Aug. 25, 2021).[6] The Merriam-Webster Dictionary defines "claim" as "a demand for something due or believed to be due." https://www.merriam-

---

[6] "[A] dictionary is a useful tool for narrowing the range of meanings ordinarily attributed to a word." *Archer Western Contractors, Ltd. v. Estate of Pitts*, 735 S.E.2d 772, 777 (Ga. 2012). *See also* Scalia & Garner, *Reading Law* app. A, at 418 ("A dictionary definition states the core meanings of a term."). The court may resort to a dictionary definition "consistent with the plain meaning of the phrase in the policy" if the definition is not included in the policy. *Dixon v. Home Indem. Co.*, 426 S.E.2d 381, 383 (Ga. Ct. App. 1992).

webster.com/dictionary/claim (last visited Aug. 25, 2021). No party has pointed the court to any evidence that Farley made a demand or assertion to RCC or Lett prior to filing her lawsuit in 2018.

As explained above, what happened to Farley was not an accident, so it was not an "occurrence" as defined by the policy.  It was, however, an offense that could result in a claim, thereby triggering the notice provision of the policy.  The Oxford English Dictionary defines the term "offense" as "a breach of law, rules, duty, propriety, or etiquette; a transgression, sin, wrong, misdemeanor, or misdeed."  https://www.oed.com/search?searchType =dictionary&q= offense&_searchBtn=Search (last visited Aug. 25, 2021). The Merriam-Webster Dictionary defines "offense" as "something that outrages the moral or physical senses, an infraction of the law, [and] a breach of a moral or social code."  https://www.merriam-webster.com/ dictionary/offense (last visited Aug. 25, 2021).   What Hunter did to Farley was clearly a breach of the law, much less etiquette or propriety.  Lett recognized that, as evidenced by the fact that she informed Hunter on the night the assault occurred that she "must call the authorities."  [PSMF ¶40, Lett Dep. 73:6-14].  She then proceeded to make the initial call to 911.  [Lett Dep. 73:16-17].  An offense that resulted in a police investigation could well result in a claim against RCC.

The Farley Defendants contend that the policy does not clearly inform the insured what event triggers its duty to notify Nautilus.  They base this argument on the use of the connector "Or" in the title "Duties in The Event Of Occurrence, Offense, Claim Or Suit."  Nautilus replies that the Farley Defendants have cited no law to support the contention that the use of "Or" renders the notice provision ambiguous.

An ambiguity exists in an insurance contract when there "is duplicity, indistinctness, an uncertainty of meaning or expression." *Collier v. State Farm Mut. Auto. Ins. Co.*, 549 S.E. 2d 810, 812 (Ga. Ct. App. 2001) (internal quotation omitted).   The Farley Defendants aver that the "policy does not even state to its insureds that failure to notify it of one 'event' that flows from another 'event' [of the four events in the title above] shall eliminate its duty to defend an insured, i.e. [sic] if the lawsuit is a result of the occurrence."  [Doc. No. 31 at 9].  The court disagrees.  Contrary to the Farley Defendants' contention, the word "Or" in the title "Duties in The Event Of Occurrence, Offense, Claim Or Suit" is not ambiguous.  The policy clearly states that the insured must notify Nautilus as soon as practicable of "an offense which may result in a claim."  [Doc. No. 26-3 at 23, Policy §IV, ¶2].  The policy contains separate requirements for notifying Nautilus of an "occurrence" or offense as opposed to a claim or "suit."  It is clear under the

plain language of the policy that RCC and Lett had a duty to notify Nautilus about Hunter's assault of Farley because it was clearly an offense that could result in a claim against RCC and Lett.

The court is not aware of any case law, nor have the Farley Defendants supplied any, that supports the Farley Defendants' argument that timely notice of a later-filed suit absolves the insured of its duty to give notice of an offense that may lead to that suit.   Indeed, a recent Eleventh Circuit opinion undermines the Farley Defendants' argument.  In *Mt. Hawley Ins. Co. v. East Perimeter Pointe Apartments*, -- F. App'x --, No. 19-13824, 2021 WL 2170426 (11th Cir. May 27, 2021), the Eleventh Circuit determined that the insured apartment complex did not timely comply with the condition precedent to "see to it" that the insurance company was notified as soon as practicable of a murder and assault on its premises when it did not provide notice until it was sued two years later.  The Eleventh Circuit explained that "[m]urder and brutal assaults . . . are neither trivial nor inconsequential" such that they are events that would not trigger a requirement to notify the insurance company.  *Id.* at *7.  This court likewise finds rape to be neither trivial nor inconsequential, especially given that Lett knew immediately that she should notify the police.

"Under Georgia law, 'a notice provision expressly made a condition precedent to coverage is valid and must be complied with, absent a showing of justification.'" *Johnson & Bryan, Inc. v. Utica Mutual Ins. Co.*, 741 F. App'x 722, 725 (11th Cir. 2018) (quoting *Kay-Lex Co. v. Essex Ins. Co.*, 649 S.E.2d 602, 606 (Ga. Ct. App. 2007)). "An insured's unreasonable failure to give timely notice excuses the insurer from providing a defense or coverage." *Id.* The policy at issue in this case clearly states that the insured "must see to it that we are notified as soon as practicable of an 'occurrence' or an offense which may result in a claim." [Doc. No. 26-3 at 23, Policy § IV, ¶2]. Georgia courts have treated the language "you must see to it" as establishing a condition precedent. *Forshee v. Emp'rs Mut. Cas. Co.,* 711 S.E.2d 28, 30–31 (Ga. Ct. App. 2011); *Kay–Lex Co.,* 649 S.E.2d at 606–07. The Eleventh Circuit has also explained that when this language "appear[s] under sections entitled, "General Conditions," and a subsection entitled, "Duties in the Event of . . . Claim or Suit," as it does in the policy at issue in this action, then ""[t]his language clearly expresses the intention that the notice provisions be treated as conditions precedent to coverage." *State Farm Fire and Cas. Co. v. LeBlanc*, 494 F. App'x 17, 21 (11th Cir. 2012). The court in *Mt. Hawley Ins. Co. v. AIKG, LLC*, No. 1:18-CV-00698-AT, 2019 WL 3526506, at *7 (N.D.Ga. July 29, 2019) examined a policy provision similar

21

to one in this action and determined that the language "you must see to it" in connection with a provision that failure to perform this duty could result in denial of coverage[7] "expressly makes the notice provision a condition precedent to coverage."  It is clear that the policy in this case contains a condition precedent that required RCC to notify Nautilus of the assault of Ronquisha Farley.

Notice provisions such as the one in the Nautilus policy "must be complied with, absent a showing of justification." *Plantation Pipeline Co. v. Royal Indem. Co.*, 537 S.E.2d 165, 169 (Ga. Ct. App. 2000).   Under Georgia law, after reviewing all of the facts and circumstances of a particular case, it may be found that an insured's delay in giving notice to its insurer was unjustified and unreasonable and, in such event, on a motion for summary judgment, the court may rule on the question as a matter of law.  *Richmond v. Georgia Farm Bureau Mutual Ins. Co.*, 231 S.E.2d 245, 249 (Ga. Ct. App. 1976) (ruling as a matter of law that there was no justification for failure to give notice when the insured waited 8 months to inform the insurer of a vehicle accident); *see also KHD Deutz of America Corp. v. Utica Mutual Ins. Co.*, 469 S.E.2d 336 (Ga. Ct. App. 1996) (ruling that insured's failure to

---

[7] The policy in the instant action contains a similar provision.  [Doc. No. 26-3 at 23-24, Policy § IV, ¶3].

promptly notify was simply unreasonable as a matter of law); *Caldwell v.*
*State Farm Fire & Casualty Ins. Co.*, 385 S.E.2d 97 (Ga. Ct. App. 1989)
(ruling as a matter of law that delayed notification was not justified).  Here,
RCC and Lett have provided no argument that they were justified in
delaying two years before notifying Nautilus about Hunter's assault of
Farley.  Absent such a showing from RCC and Lett, the court finds that they
failed to comply with the notice requirement in the policy.  Given that the
court has determined that RCC and Lett did not comply with a condition
precedent necessary to trigger coverage under the policy, the court need not
address whether the claims asserted by the Farley Defendants in the
underlying lawsuit are excluded under the policy.  Nautilus' motion for
summary judgment is granted.

## VI.   Conclusion

For the reasons explained above, the court GRANTS the plaintiff's
motion for summary judgment.  [Doc. No. 26].  Nautilus Insurance Company
does not have an obligation to defend or indemnify its insured, Rainbow
Community Center, Inc., or Rainbow's employee, Clara Lett, for the claims
asserted in the lawsuit filed by Elanda Brown as next friend of Ronquisha
Farley in the Superior Court of Newton County, Georgia, civil action no.

SUCV2018001682.  As no matters remain pending before this court, the

clerk is DIRECTED to close this case.

      **SO ORDERED** this 22nd day of September, 2021.

                                      /s/CHARLES A. PANNELL, JR
                                      CHARLES A. PANNELL, JR.
                                      United States District Judge